1  DONALD W. FITZGERALD, State Bar No. 095348
   JASON E. RIOS, State Bar No. 190086
2  JENNIFER E. NIEMANN, State Bar No. 142151
   FELDERSTEIN FITZGERALD
3  WILLOUGHBY & PASCUZZI LLP
   400 Capitol Mall, Suite 1750
4  Sacramento, CA 95814
   Telephone: (916) 329-7400
5  Facsimile: (916) 329-7435
   e-mail: dfitzgerald@ffwplaw.com
6  e-mail: jrios@ffwplaw.com
   e-mail: jniemann@ffwplaw.com
7
   Attorneys for the Chapter 7 Trustee
8
                    UNITED STATES BANKRUPTCY COURT
9
                     EASTERN DISTRICT OF CALIFORNIA
10
                          SACRAMENTO DIVISION
11

12  In re:                          CASE NO.: 11-39335-C-7

13  ROBERT A. COOK,[1]              Chapter 7

14        Debtor.                    DCN: FWP-26

15                                   Date:      December 9, 2014
                                     Time:      9:30 a.m.
16                                   Judge:     Hon. Christopher M. Klein
                                     Courtroom: 35, Department C
17

18      **CHAPTER 7 TRUSTEE'S MOTION FOR AUTHORITY TO MAKE
                  INTERIM DISTRIBUTIONS**
19

20        David D. Flemmer, the former Chapter 11 Trustee and the current duly-appointed and

21  acting Chapter 7 Trustee (the "Trustee"), hereby files this Motion for Authority to Make Interim

22  Distributions (the "Motion") pursuant to Bankruptcy Code § 726, Federal Rule of Bankruptcy

23  Procedure 3009, and other applicable law.  The Trustee has administered substantially all of the

24  assets of the bankruptcy estate of Robert A. Cook (the "Cook Estate") and currently holds

25  approximately $3,640,505 (the "Estate Funds"), which includes $775,000 held in a tax reserve

26  _____
    [1] By Court order entered December 3, 2012 [Docket No. 368], cases originally filed as Kings
27  Professional Basketball Club, a joint venture, Case No. 11-44952 and the Kings Professional
    Basketball Club, a California general partnership, Case No. 12-27935, were substantively
28  consolidated, effective retroactively to August 8, 2011, into the case of Robert A. Cook, Case No.
    11-39335.

account. The Trustee recently filed current tax returns for the Cook Estate and has worked diligently to resolve most disputes over the allowance or amount of claims. The Trustee submits that it is in the best interests of the creditors of the Cook Estate for the Trustee to make an interim distribution of Estate Funds to holders of allowed claims (reserving of funds for certain unresolved claims and for projected administrative claims) in the aggregate amount of up to $2,784,484.90 ($2,782,484.90 general unsecured claims + $2,000 priority), with such claims and distributions to be made or reserved on account of priority and general unsecured claims in the amounts and in the manner as set forth on Exhibit 1 to the Motion. This distribution would pay or reserve approximately 8% of the amount of general unsecured claims of record in this case and still allow the Trustee to reserve funds to complete the final administration of this case. The Motion also requests authority to utilize funds previously held in blocked accounts for such distribution and reservation, and to hold all remaining Estate Funds in general, unblocked accounts. The Motion further requests approval of compromises of the claims of creditors Joseph Consulo, James Dickens, and Johanne Bradford. Accordingly, the Trustee requests entry of an order authorizing such distributions and related relief as set forth below.

This Motion is supported by the Declaration of David D. Flemmer (the "Flemmer Decl."), the Exhibits filed in support of the Motion, the Court's record and file in this case, and such other materials and arguments as may be presented at or before the hearing.

## I.

## RELIEF REQUESTED

By way of this Motion, the Trustee respectfully requests the entry of an order:

a.      Authorizing the Trustee to distribute, or reserve from distribution on account of certain claims, an aggregate amount of up to $2,784,484.90 from the Cook Estate to the holders of allowed claims, with such claims and distributions and reservations to be made pro-rata as set forth on Exhibit 1 (the "Interim Distribution Report") to this Motion or as may be modified at or before the hearing on the Motion (the "Interim Distribution").

b.      Allowing Claim No. 21 filed by Joseph Consulo in the compromised amount of $250,000 to be paid pro-rata with other undisputed, allowed claims of general unsecured

1  creditors, as set forth on the Interim Distribution Report.

2        c.     Allowing Claim No. 22 filed by James Dickens in the compromised amount of

3  $55,000 to be paid pro-rata with other undisputed, allowed claims of general unsecured creditors,

4  as set forth on the Interim Distribution Report.

5        d.     Authorizing the Trustee to reserve from the Interim Distribution, unless otherwise

6  agreed by the Trustee on or before the hearing on this Motion, the pro-rata share of the Initial

7  Distribution for the holders of the claims filed by (i) One West Bank and assigned to CRE LJ

8  4800 Riverside, LLC, Claim No. 19 in the amount of $23,121,171.77, and (ii) John Vodonick,

9  Claim No. 36 in the amount of $680,000.00 (collectively, the "Unresolved Claims").

10  Accordingly, unless the Unresolved Claims are resolved at or before the hearing on this Motion,

11  the Trustee requests that the order granting this Motion provide that the amounts allocated for the

12  Unresolved Claims, as set forth on the Interim Distribution Report, be reserved pending

13  resolution of the Trustee's administration of the Unresolved Claims and authorize the Trustee to

14  proceed with the Interim Distribution without making any distributions on account of the

15  Unresolved Claims until further order of the Court.

16        e.     Authorizing the Trustee to make a first and final distribution in the amount of

17  $2,000 to Johanne Bradford in full satisfaction of any obligations of the Cook Estate to Ms.

18  Bradford, if any, including for Claim No. 42, which was filed as a priority claim for wages in the

19  amount of $26,390.00.

20        f.     Authorizing the foregoing distributions from the Cook Estate blocked accounts

21  maintained by the Trustee at Wells Fargo Bank designated as the Net Proceeds Account (account

22  number xxxxxx2367) and the Tax Reserve Account (account number xxxxxx2367), and further

23  lifting the blocked account designations and requirements, so that the remaining Estate Funds

24  may be combined into one Cook Estate account (account number xxxxxx0942) that would not be

25  a blocked account.

26        g.     Granting such other relief as is just and proper.

27  ///

28  ///

**II.**

**BACKGROUND**

**General Case Administration**

Robert A. Cook (the "Debtor") filed a voluntary petition under chapter 11 of the Bankruptcy Code on August 8, 2011.

On or about September 27, 2011, Traynor Marina Investments, a secured creditor claiming a lien on most of the Debtor's assets, filed a motion for the appointment of a Trustee. The Court granted the motion and on October 27, 2011, the Court entered its order approving the appointment of David D. Flemmer as the Chapter 11 Trustee for the Debtor's bankruptcy estate.

Pursuant to the Trustee's Motion to Convert Case to Chapter 7, the Court entered an order on December 4, 2013 converting this case to one under Chapter 7.  On December 5, 2013, David D. Flemmer was appointed as the Chapter 7 Trustee and he continues to serve in that capacity.

The majority of the Debtor's assets were liquidated during the Chapter 11 case.  The Trustee currently holds approximately $3,640,505, which includes $775,000 held in a tax reserve account, which was primarily generated from the Trustee's sale of the estate's interest in the entity that owns the Sacramento Kings Professional Basketball team and arena.   See Final Order Approving Sale of Kings LP Interests, Dkt. No. 502.

The remaining (known) asset that may be liquidated in the case is a 50% interest in B & C Arden, a California general partnership that holds a long term ground lease for the real property located at 3341 Arden Way Sacramento, California and owns a commercial building located thereon subject to the terms of the ground lease.

The Trustee recently filed federal and state tax returns for the estate for the years 2011, 2012, and 2013. No tax was due on any of those returns.  The Trustee has requested prompt determinations pursuant to Code section 505(b)(2) that there is no unpaid tax liability from those returns and the 60th day for the taxing agencies to select the returns for examination was on or before November 9, 2014.

///

///

**Claims Administration**

The Trustee has reviewed the claims filed against the Cook Estate and has informally resolved numerous potential claim objections or other potential disputes regarding those claims, which has resulted in many claims being withdrawn or amended. Those resolutions are not detailed in this Motion, since the Trustee does not dispute the amount of such claims as now shown on the Claims Register as withdrawn or amended, and such resolutions have been included in the Initial Distribution Report. The aggregate amount of general unsecured claims of record in this case, after all current modifications or adjustments, is $34,781,062.00. As part of the Trustee's process of completing the claims administration and making the Interim Distribution, the Trustee proposes to resolve or treat certain claims or reserve for certain claims pending resolution, as set forth below[2]:

**A. Priority/Administrative Claims**

On July 15, 2014, Johanne Bradford filed a proof of claim against the Cook Estate designated as Claim Number 42 on the Claims Register (the "Bradford Claim") in the amount of $26,390.00 as a priority claim for wages, salaries, or commissions, with copies of what appear to be time sheets attached to the claim for the post-petition time period from October 2011 through June 2014. The Trustee is informed and believes that Ms. Bradford contends that she provided services to one or more of the Debtor's business entities and/or Mr. Cook individually, including during the time period before the Trustee was appointed. The Trustee has not hired or contracted with Ms. Bradford, and denies that the Cook Estate owes any payments to Ms. Bradford.[3] To resolve this dispute, the Trustee and Ms. Bradford entered into a stipulation (the "Bradford Stipulation"), subject to this Court's approval, to pay Ms. Bradford $2,000 in full satisfaction of any claims that Ms. Bradford has against the Cook Estate of any nature whatsoever but with a

---

[2] The existing compromises have already been included in the amounts shown on the Interim Distribution Report.

[3] The Trustee did pay the Debtor's company, Bob Cook Company LLC, $560 in April 2014 for reasonable costs of assembling and providing records that were necessary to the filing of the Cook Estate tax returns and that any obligations of the Cook Estate related to obtaining those documents has been fully satisfied. The Trustee is further informed and believes that Ms. Bradford, acting on behalf of Bob Cook Company LLC, assisted with the production of those records.

reservation of rights by Ms. Bradford to assert the amounts asserted in the Bradford Claim against persons or entities other than the Cook Estate, including the Bob Cook Company, LLC and/or the Debtor, individually.  A copy of the Bradford Stipulation is attached to the Exhibit Document as Exhibit 2.

The Internal Revenue Service filed Claim No. 31 which amended its previously filed Claim No. 14 to $0.00.  The Internal Revenue Service still has claims of record in the Kings Professional Basketball Club, a joint venture, Case No. 11-44952, Claim No. 1 for $200, and the Kings Professional Basketball Club, a California general partnership, Case No. 12-27935 (Claim Nos. 3 and 12 for $8,490.00).  The Trustee disputes that any amounts are owed on these claims because those debtors, whose estates have been consolidated with the Robert Cook case (see footnote 1), are pass through entities for income tax purposes and do not owe taxes of their own, and the IRS has amended its claim against the Debtor to $0.00.  The Trustee is informed and believes that the IRS will withdraw these claims and does not intend to make or reserve any distributions on account of these claims.

The U.S. Trustee filed a claim designated as Claim No. 34 in the amount of $650.00 for unpaid Chapter 11 quarterly fees.  The Trustee confirmed with the U.S. Trustee's office that all U.S. Trustee fees have been paid and, therefore, lists the claim at $0.00 on the Interim Distribution Report.  The Trustee does not intend to make or reserve any distributions on account of this claim.

**B.  Secured Claims**

JP Morgan Chase Bank, N.A. filed a secured claim against the Cook Estate, Claim No. 3, in the amount of $297,918.15 (the "JP Morgan Claim").  The JP Morgan Claim states that the claim is fully secured by real estate located at 6416 Orange Hill Lane, Carmichael, CA 95608.  The attachments to the JP Morgan Claim show that the debt relates to a home equity line of credit.  The Debtor's petition and schedules state that 6416 Orange Hill Lane, Carmichael, CA 95608 is the Debtor's personal residence (the "Residential Property").  The Debtor's schedules also show that the Residential Property is not owned by the Debtor, but by an affiliate of the Debtor, and is not considered property of the Cook Estate.

JP Morgan Chase Bank, N.A. also filed another secured claim against the Cook Estate, Claim No. 30.  That claim has been amended to, among other things, change the name of the creditor to PennyMac Holdings, LLC and the amount of the claim as $626,897.89 (as amended, the "PennyMac Claim").  The PennyMac Claim states that the claim is fully secured by the Residential Property.  The attachments to the PennyMac Claim show that the debt is for a mortgage on the Debtor's residence.  PennyMac has also filed a motion for relief from stay in this case (PD-1) asserting that its claim is fully secured and that the obligations are secured by the Debtor's personal residence.

The Trustee is informed and believes that one or both of the JP Morgan Claim and the PennyMac Claim are based on loans made to purchase or refinance the Debtor's purchase of his residence and disputes that that JP Morgan or PennyMac are entitled to collect any deficiency against the Cook Estate.  See California Code of Civil Procedure Section 580.  Moreover, these creditors can obtain payment of their claims from their collateral, as they are both filed as fully secured.  Accordingly, the Trustee does not intend to make or reserve any distributions on account of these claims.

**C.  Unsecured Claims**

**First Bank Claim**

On October 21, 2014, the Trustee filed a Motion to Estimate the Claim of First Bank, Claim No. 18, at $0.00.  See FWP-25 (Docket No. 774).  First Bank has entered its statement of non-opposition on the docket on November 3, 2014, and the Trustee anticipates that following the hearing on this motion on November 18, 2014, the Court will enter an order finally allowing the First Bank Claim at $0.00 for all purposes, including distributions from the Cook Estate.

**Consulo and Dickens Claims**

Joseph Consulo filed a proof of claim against the Cook Estate designated as Claim Number 21 on the Claims Register in the amount of $1,396,809.27, and thereafter filed certain amendments to the claim (as amended, the "Consulo Claim").  James Dickens filed a proof of claim against the Cook Estate designated as Claim Number 22 on the Claims Register in the

///

1  amount of $210,232.34, and thereafter filed certain amendments to the claim (as amended, the
2  "Dickens Claim").

3      The Consulo Claim and the Dickens Claim (collectively, the "Investor Claimants") both
4  assert claims against the Debtor alleging amounts owed for breach of contract, money loaned and
5  fraud. The claims do not attach a contract signed by the Debtor and instead attach a letter
6  agreement providing for compensation for a third party's services in obtaining the claimants'
7  investment in companies in which the Debtor owned an interest. The claimants further assert that
8  the Debtor fraudulently induced their investments and/or agreed to personally guaranty their
9  investments by statements made by the Debtor to the claimants. The Trustee disputes that the
10 Debtor entered into any agreement with the Investor Claimants. The Debtor testified at his 2004
11 examination that he did not personally agree to pay the Investor Claimants any money. The
12 Trustee disputes that the Investor Claimants have valid claims against the Cook Estate for fraud.
13 In order to resolve these disputes, the Trustee and the Investor Claimants, through counsel, have
14 agreed to a compromise subject to the Court's approval. The compromise agreements will be
15 filed in support of the Motion as Exhibits 3 and 4 to the Motion. Those compromises provide for
16 (i) allowance of Claim No. 21 filed by Joseph Consulo in the compromised amount of $250,000
17 to be paid pro-rata with other allowed claims of general unsecured creditors, and (ii) allowance of
18 Claim No. 22 filed by James Dickens in the compromised amount of $55,000 to be paid pro-rata
19 with other allowed claims of general unsecured creditors. The Trustee believes that these
20 compromises are in the best interests of the estate and will maximize the distributions to creditors.

21     **Vodonick Claims**

22     John Vodonick filed two claims designated on the Claims register as Claim Nos. 12 and
23 36. Mr. Vodonick filed a withdrawal of Claim No. 12 as a duplicate of Claim No. 36 (the
24 "Vodonick Claim"), with Claim No. 36 as the surviving claim. The Vodonick Claim is in the
25 amount of $680,000.00 for pre-petition legal services. The Vodonick Claim does not attach any
26 engagement agreements, billing invoices, or other documents in support of the claim.[4] The

27

28 [4] An amendment to the Vodonick Claim was recently filed on Saturday, November 8, 2014 and
the Trustee will evaluate the amendments.

1  Trustee and his counsel have attempted to informally obtain documents relating to Vodonick

2  Claim and evaluate the validity of the claim.  While the Trustee has received some documents

3  relating to the Vodonick Claim, the Trustee has not yet received all of the documents that he

4  needs to reasonably determine the validity of the Vodonick Claim.  Therefore, the Trustee is not

5  prepared to make any distributions on account of the Vodonick Claim at this time, and unless the

6  matter is resolved prior to the hearing on this Motion, the Trustee intends to reserve the pro-rata

7  share of the Interim Distribution for the $680,000 Vodonick Claim pending further order of the

8  Court.

9       **OneWest Claim**

10       The Trustee continues to evaluate a potential objection to the $23,121,171.77 claim filed

11  by CRE LJ Riverside, LLC ("CRE"), an affiliate of OneWest Bank, based on a personal

12  guarantee by the Debtor, Claim Number 19, as amended (the "CRE Claim").  The CRE Claim is

13  by far the largest claim in this case.  The CRE Claim asserts that it is based on a written

14  Commercial Guaranty ("Guaranty") dated on or about August 8, 2008.  The Trustee is informed

15  and believe that the Guaranty was with respect to a $25 million loan ("Loan") made by La Jolla

16  Bank, FSB ("Bank") to Captain's Table Hotel, LLC and that the Loan was secured by the Le

17  Rivage Hotel ("Hotel") and related personal property.

18       The Trustee is informed that on February 19, 2010, the Office of Thrift Supervision

19  appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver of the Bank.  On the

20  same day, the FDIC entered into a purchase and assumption agreement with OneWest to, among

21  other things, purchase the assets of the Bank, including the Loan and Guaranty.  According to the

22  FDIC's press release of OneWest's purchase of the Bank, the FDIC and OneWest entered into a

23  loss-share transaction on $3.31 billion of the Bank's assets.

24       On June 5, 2012, CRE filed a request for issuance of a notice of transfer of OneWest's

25  claim to CRE as of April 25, 2012.  CRE asserts it is the successor to the Bank with respect to the

26  Guaranty based on an assignment of the Loan and Guaranty from OneWest to CRE.

27  ///

28  ///

The Trustee is informed that CRE foreclosed on the Hotel in May 2012 and obtained title to the Hotel with a $6.5 million credit bid, and that CRE subsequently sold the Hotel less than seven months later in December 2012 for $16 million.

On June 27, 2013, CRE filed an amended claim in the amount of $23,121,171.77 (the CRE Claim), reducing the amount of the claim previously filed by $3,161.72 for miscellaneous fees as well as by $6,500,000.00 for the credit bid amount for the Hotel.

As early as August 1, 2013, the Trustee made a written request to counsel for CRE for copies of documents and other particulars relating to the CRE Claim as part of the Trustee's investigation regarding possible defenses to the CRE Claim.  While certain documents were produced informally, CRE declined to produce several categories of documents requested.  The Trustee thereafter served a Rule 2004 Subpoena on One West on January 24, 2014 requesting documents and testimony from One West that the Trustee believes to be relevant to the Trustee's evaluation of the CRE Claim.  Since then, the Trustee's counsel has worked over many months to obtain the requested documents including numerous meet and confer communications with counsel for CRE.  While CRE has now produced thousands of documents, most of which were produced in August and October of 2014, the Trustee has not yet received all of the documents requested by his 2004 Subpoena, has not yet received a privilege log, and has not yet completed his review and analysis of the documents produced.  Under the circumstances, the Trustee is not prepared to make any distributions to CRE pending the Trustee's final determination of whether a claim objection will be filed and if one is filed, pending resolution of the objection.  Accordingly, unless the Trustee and CRE are able to reach a mutual agreement regarding allowance of the CRE Claim at or before the hearing on this Motion, the Trustee intends to reserve the pro-rata share of the Interim Distribution for the $23,121,171.77 CRE Claim pending further order of the Court.

**Reserves**

Most of the Cook Estate funds are currently held in blocked accounts maintained by the Trustee at Wells Fargo Bank designated as the Net Proceeds Account (account number xxxxxx2367) and the Tax Reserve Account (account number xxxxxx2367) (collectively, the "Blocked Accounts").  The Trustee seeks to make the Interim Distributions and reserves of an

aggregate amount of up to $2,784,484.90 from the Blocked Accounts and combine the remaining

Estate Funds after such distributions and reserves into one unblocked Cook Estate account

(account number xxxxxx0942) pending further order of the Court.  The Trustee believes that this

remaining balance will be sufficient to cover potential taxes, which are not currently expected to

be owed, administrative expenses, and still leave funds available for a final distribution once the

case administration is completed.

### III.

### ARGUMENT

The Trustee believes in his business judgment that the proposed Interim Distribution

would be in the creditors' best interests.  If approved now, the Trustee believes he can make the

Interim Distributions before the end of 2014.  This case was filed in 2011 and has been pending

for over three years.  While the Trustee did make some substantial distributions to certain

creditors in connection with the sale of the estate's interest in the entity that owns the Sacramento

Kings Professional Basketball team and arena, many creditors have not yet received any

distributions.  Having recently completed and filed the estate's tax returns, after extensive efforts,

for 2011, 2012, and 2013, the Trustee is satisfied that the Cook Estate can now make distributions

to general unsecured creditors. Fed. R. Bankr. P. Rule 3009 provides as follows:

> "**In a chapter 7 case, dividends to creditors shall be paid as promptly as practicable.**
> Dividend checks shall be made payable to and mailed to each creditor whose claim has
> been allowed, unless a power of attorney authorizing another entity to receive dividends
> has been executed and filed in accordance with Rule 9010.  In that event, dividend checks
> shall be made payable to the creditor and other entity and shall be mailed to the other
> entity." (Bold type supplied)

There is little case law with regard to Fed. R. Bankr. P. Rule 3009.  A leading bankruptcy

treatise, *Collier on Bankruptcy*, explains that Rule 3009 does allow for multiple dividends, or

interim distributions, during a chapter 7 case.

Paragraph 3009.01 of *Collier on Bankruptcy* states:

1

> "Rule 3009 contemplates that there may be multiple dividends during a chapter 7 case. This is consistent the mandate of the rule that "dividends to creditors shall be paid as promptly as practicable." Rule 3009 governs distributions to priority as well as general unsecured creditors." Citing the 1983 Advisory Committee Notes to Fed. R. Bankr. P. Rule 3009.

2

3

4 See *Collier on Bankruptcy*, Sixteenth Edition, 2013 Matthew Bender & Company, Inc., Part III,

5 Bankruptcy Rules, ¶3009.01.

6   The bankruptcy court's decision in *In re Quid Me Broadcasting, Inc.*, 181 B.R. 715

7 (W.D.N.Y. 1995) provides additional guidance on interim distributions in a chapter 7 case. In

8 that case, the bankruptcy court held that a chapter 7 trustee was not required to pay the IRS

9 administrative tax liability claim concurrently with the filing of the tax return unless the court for

10 cause shown directed an "interim" distribution. *Id.* at 717. The Court noted that 11 U.S.C.

11 §726(a) which dictates how property of the estate shall be distributed, is governed by the order set

12 out in 11 U.S.C. §507 according to proofs of claims filed and that sufficient funds need be set

13 aside to provide for payment of administrative expenses according to 11 U.S.C. §503(b). *Id.*

14 citing 11 U.S.C. §507(a) (1).

15   In this case, the Trustee proposes an interim distribution and reserves for unresolved

16 claims of an aggregate amount of up to $2,784,484.90, in accordance with the "Initial

17 Distribution Report" attached as Exhibit 1 to this Motion. As stated above, the Trustee does not

18 believe he needs to retain the funds to be distributed in the Interim Distribution to complete the

19 administration of this case. The Trustee submits that good cause exists to make an interim

20 distribution or dividend now, which would allow for distributions as promptly as practicable on

21 allowed claims as contemplated under Fed. R. Bankr. P. Rule 3009. Not making an interim

22 distribution at this juncture subjects the Cook Estate's creditors to unnecessary delays in payment.

23 Moreover, the Trustee's reservation of funds for the unresolved claims will not prejudice those

24 creditors. The Trustee's Interim Distribution Report shows that he will reserve the full pro-rata

25 share for those unresolved claims pending final resolution. The Trustee has worked diligently to

26 resolve those claims but, despite those efforts, he is not yet prepared to represent that his actual or

27 potential objections to those claims have been resolved such that an interim distribution should be

28 made on those claims. On the basis of the foregoing, the Trustee respectfully requests that this

1   Court find that good cause exists to make the Interim Distributions and reservations as proposed.

2   The Trustee has carefully weighed his options with regard to an interim disbursement, and he

3   believes that it is appropriate at this time to pay these dividends.

4                                              **X.**

5                                        **CONCLUSION**

6          WHEREFORE, the Trustee respectfully requests that the Court enter an order granting the

7   relief requested as set forth in the "Relief Requested" section on pages 2-3 above.

8   Dated:  November 10, 2014

9                                    FELDERSTEIN FITZGERALD
                                     WILLOUGHBY& PASCUZZI LLP
10

11                                   By: */s/ Jason E. Rios*_____
                                         JASON E. RIOS
12                                       Attorneys for David D. Flemmer,
                                         Chapter 7 Trustee
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28